## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**PATRICK RIORDAN**                                                                        **PLAINTIFF**

**VERSUS**                                          **CIVIL ACTION NO. 3:07cv590-DPJ-JCS**

**KOHLER CO.**                                                                        **DEFENDANT**

### ORDER

This age discrimination dispute between Plaintiff Patrick Riordan and Defendant Kohler Co. is before the Court on Defendant's motion for summary judgment [26].  The Court, having fully considered the parties' submissions and applicable law, finds that Defendant's motion should be granted.

**I.      Facts and Procedural History**

In July 1999, Defendant Kohler Co. ("Kohler") hired Plaintiff Patrick Riordan as a Quality Tech III and a Metrology Lab Quality Tech at Kohler's engines facility in Hattiesburg, Mississippi.  Plaintiff was fifty-three years old at the time.  As a metrologist, Plaintiff's duties included calibrating and issuing gages.  It was also Plaintiff's responsibility to keep accurate records documenting that the gages were properly calibrated and in working condition.  These records were maintained in the "GageTrak" software database.

Although the first few years of his employment were relatively uneventful, over time, a series of different supervisors began documenting performance issues.  In February 2003, Curt Brost reprimanded Plaintiff for an ongoing conflict with a co-worker that was deemed "totally unacceptable."  Ex. "D" to Defendant's Motion for Summary Judgment ("Defendant's Motion").  The reprimand warned that both workers "face[d] potential dismissal."  *Id*.  In 2004, Plaintiff

received an employment review that ranked his performance in various categories at the bottom of the applicable scale.  Ex. "E" to Defendant's Motion.

Issues related to Mr. Riordan's job performance escalated in 2006.  In January of that year, Quality Manger Steve Doyle reprimanded Plaintiff for misinforming him that a coordinate measuring machine ("CMM") was operational.  Ex. "F" to Defendant's Motion.  Plaintiff testified that it was a miscommunication but that Doyle had concluded that Plaintiff failed to tell the truth.  Plaintiff's Depo. at 45-46.  In August, Alan O'Dell reported that Plaintiff worked on the CMM, but left the plant without reporting the machine's status leading to a loss of production.  Ex. "G" to Defendant's Motion.  That same month, Doyle and Plant Manger Mike Thompson signed a written reprimand regarding two separate incidents where Kohler believed Plaintiff was slow to complete tasks, including implementation of a new software program for which he had been trained.  Ex. "H" to Defendant's Motion.  The reprimand warned that further infraction might lead to termination of employment.  *Id*.  Plaintiff signed the reprimand under protest and then sent a lengthy email to human resources stating that he was not the problem.  Ex. "I" to Defendant's Motion.  There is no indication of age discrimination in the email.  *Id*.

Also in August 2006, Quality Process Engineer Eric Lonjak determined that 238 gages were past due for calibration.  The gages were Plaintiff's responsibility, and when asked Plaintiff via e-mail to explain.  Plaintiff responded that he was doing more than others and that the backlog was not his fault.  When pressed, Plaintiff further responded that he had missed days "due to being placed on medical leave due to hypertension. *There is a note in the HR file to confirm this*."  Ex. "K" to Defendant's Motion (emphasis added).  Defendant did not believe the explanation and responded that no such note existed.  *Id*.  Plaintiff now admits that when he

wrote that a note was in the "HR file," he had not yet "submitted anything from any doctor." Plaintiff's Depo. at 67.  After the email exchange, Plaintiff submitted a doctor's note restricting him to 50-55 hours per week.  *Id*. at 70-71.  This was the second instance in which Kolher questioned Plaintiff's veracity.

On October 2, 2006, Plaintiff was reprimanded for having been absent 28% of the time in May, 9% in June, 9% in July, and 36% in September.  Ex. "N" to Defendant's Motion.  That same day, Plaintiff was reprimanded for failing to follow procedures that required him to update the calibration records in the GageTrak software.  Exs. "P" and "Q" to Defendant's Motion.  Under the  procedures, calibrations by outside vendors must be recorded in GageTrak.  Plaintiff stated that without seeing the GageTrak database, he had "no idea" whether he followed the procedure.  Plaintiff's Depo. at 91.

The final conflict materialized October 10, 2006, but began September 19, 2006, when Lonjak sent Plaintiff an e-mail noting that the calibration for the ADCOLE machine was a year and a half past due.  Ex. "R" to Defendant's Motion.  The ADCOLE machine required expensive calibration performed by the manufacturer's technicians.  It could not be performed in-house. Plaintiff's Depo. at 93.  Plaintiff responded to the email writing that the calibration records in GageTrak were incorrect because the manufacturer calibrated the machine the previous year.  Ex. "R" to Defendant's Motion.  Plaintiff was correct.  Ex. "S" to Defendant's Motion (certificate of calibration dated July 20, 2005).

Plaintiff's response to Lonjak further stated that he and prior management had developed a procedure to "assure that the gage [remained] true to the calibration performed."  Ex. "R" to Defendant's Motion.  This would allow Kohler to delay the expensive manufacturer's calibration

as long as the machine remained within specifications.  According to Plaintiff, after a calibration, he would produce and thoroughly measure what he called a "gold standard" part that could be subsequently used as a comparison to determine if calibration was necessary.  Ex. "R" to Defendant's Motion; *see also* Plaintiff's Depo. at 94.  Plaintiff's email response made no mention of having actually run the "gold standard part" procedure, and therefore did not mention any dates for having conducted the procedure.  *Id*.  Lonjak's reply instructed Plaintiff to update the database with the "latest *calibration* date . . . ."  *Id.* (emphasis added).

On October 10, 2006, Lonjak accessed GageTrak and discovered that after his conversation with Plaintiff, someone had entered the GageTrak database and recorded that Plaintiff calibrated the ADCOLE machine on July 29, 2006.  Ex. "T" to Defendant's Motion. Lonjak called a meeting with Plaintiff to ask why the calibration date had been changed to July 2006 when the last calibration was July 2005.  Plaintiff's Depo. at 103.  Plaintiff explained that he ran the "gold standard" procedure during a production shutdown that started the last week of July 2006.  *Id*.  Although that date matches the date inputted into GageTrak, Plaintiff flatly denied that he changed the GageTrak entry to reflect that he calibrated the machine on that date. Plaintiff's Depo. at 100.

On October 25, 2006, Quality Manger Steve Doyle completed an Authorized Corporate Transaction ("ACT") formally requesting approval to terminate Plaintiff's employment.  The form first cited Plaintiff's history of performance issues.  Ex. "U" to Defendant's Motion.  Next, the ACT stated that Plaintiff had falsely documented that the last calibration of the ADCOLE machine occurred in July 2006 when the last calibration was actually July 2005.  After five

management level employees signed off on the termination request, *id.*, Plaintiff was notified in a meeting on November 1.

Following exhaustion of his administrative remedies, Plaintiff filed this action in Rankin County Circuit Court in September 2007, alleging age discrimination, wrongful termination, and various state law claims.  Kohler removed the case to this Court and has now moved for summary judgment in its favor.  In his response to Defendant's motion, Plaintiff conceded three of his four original claims against Kohler, leaving only the age discrimination claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*

**II.    Analysis**

   A.    Summary Judgment Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for

trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

B.     Age Discrimination Claim

1.     ADEA Standard

Plaintiff contends that his discharge by Kohler violated the ADEA. In the absence of direct evidence of discrimination, a plaintiff may create a presumption of age discrimination by first stating a prima facie case under the *McDonnell Douglas* framework. *See Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). A prima facie case requires showing that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Rachid v. Jack In The Box, Inc*., 376 F.3d 305, 309 (5th Cir. 2004). The "otherwise discharged because of his age" alternative to the fourth element applies when the plaintiff is not replaced. *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 150 (5th Cir. 1995). "In cases where the employer discharges the plaintiff and does not plan to replace [him], . . . the fourth element is, more appropriately, that after the discharge others who were not members of the protected class

remained in similar positions." *Meinecke v. H & R Block of Houston,* 66 F.3d 77, 83 (5th Cir. 1995) (citations and internal punctuation omitted).

Once the plaintiff establishes a prima facie case, the employer may rebut the presumption of discrimination by "articulating a legitimate, nondiscriminatory reason for the discharge." *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir. 1993).  Satisfaction of this burden eliminates the presumption of discrimination created by the prima facie case.  *Wallace v. Mothodist Hosp. Sys.,* 271 F.3d 212, 219 (5th Cir. 2001).  "The plaintiff then bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against [him] because of [his] protected status." *Laxton v. Gap, Inc.,* 333 F.3d 572, 578 (5th Cir. 2003).  To carry this burden, "a plaintiff must present facts to rebut each and every legitimate non-discriminatory reason advanced by [his] employer in order to survive summary judgment." *Wallace*, 271 F.3d at 220 (citations and quotations omitted); *see also Machinchick v. PB Power, Inc.,* 398 F.3d 345, 351 (5th Cir. 2005) (holding that "a plaintiff relying upon evidence of pretext to create a fact issue on discriminatory intent falters if he fails to produce evidence rebutting all of a defendant's proffered nondiscriminatory reasons").  In rare situations, however, a defendant may be entitled to summary judgment "if the record conclusively reveal[s] some other, nondiscriminatory reason for the [adverse] decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination has occurred." *Reeves*, 530 U.S. at 148.

2.      Plaintiff's ADEA Claim

The Court assumes, without deciding, that Plaintiff has established a prima facie case of age discrimination.[1]  Once Plaintiff establishes a prima facie case of discrimination, the burden of production shifts to Kohler to provide a legitimate, nondiscriminatory reason for firing Plaintiff. To carry this burden, Kohler "need only articulate a lawful reason [for terminating Plaintiff], regardless of what its persuasiveness may or may not be." *Bodenheimer*, 5 F.3d at 958.  Kohler avers that it terminated Plaintiff's employment due to the ADCOLE calibration records coupled with the history of poor performance and disciplinary problems.  These reasons satisfy Kohler's burden of production.

Under the modified *McDonnell Douglas* analysis, Plaintiff must now show either that (1) Kohler's reason is false and is a pretext for age discrimination, or (2) Kohler's reason, although true, is only one reason for Plaintiff's discharge, and Plaintiff's age was a motivating factor for his termination.  *Rachid*, 376 F.3d at 312.   Plaintiff has not offered evidence of mixed motives, instead asserting that Kohler's stated reason for firing him was false.  "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton*, 333 F.3d at 578.   Accordingly, Plaintiff need only provide "sufficient evidence to find that the

---

[1] Kohler concedes the first two elements.  The third appears to have been met because Kohler's position relies on distinguishable authority.  Finally, the record is not sufficient to establish Kohler's burden under Rule 56(c) with respect to the fourth element.  More specifically, Kohler argues that Plaintiff was not replaced and therefore cannot establish the fourth element. However, in such cases, a plaintiff can still establish a prima facie case if "others who were not members of the protected class remained in similar positions."  *Meinecke,* 66 F.3d at 83.  This issue was not addressed in Defendant's original motion, which is one reason for rejecting it, and although the issue was addressed in reply, the facts are not sufficient to meet the Rule 56(c) standard of showing the absence of a genuine issue of material fact.

employer's asserted justification is false." *Reeves*, 530 U.S. at 135.  However, he must do so as to each asserted justification.  *Wallace*, 271 F.3d 220.

Plaintiff's response to Kohler's summary judgment motion raises only two arguments in an effort to show pretext:  (1) that Kohler's reason for the discharge changed over time; and (2) that Plaintiff is not the individual who changed the GageTrak database regarding the ADCOLE calibration.  Plaintiff's position fails because the first argument is factually inaccurate, and the second is legally insufficient.[2]

        a.      Whether Kohler Changed Its Reasons

Plaintiff asserts that Kolher offered differing explanations for its decision at different times.  The record evidence fails to substantiate the claim.  Plaintiff claims that Kolher first based the termination exclusively on excessive absences rather than the GageTrak incident upon which it now relies.  To support his argument, Plaintiff cites to his own description of the termination found in his EEOC charge of discrimination.  *See* Ex. "A" to Plaintiff's Response.  Aside from Defendant's hearsay objection to this evidence, Plaintiff unequivocally testified in his deposition that he was not given a reason for the decision.  Plaintiff's Depo. at 116-17.  Accordingly, Plaintiff's statements in the EEOC charge are at best speculative.  *TIG Ins. Co.*, 276 F.3d at 759 (holding that conclusory allegations and speculation cannot create genuine issues for trial).[3]

---

[2]During his deposition, Plaintiff provided five reasons why he thinks the decision was based on age.  All five were speculative at best and related to work-place disagreements that had nothing to do with age (*e.g*., the plant manager ruled "by fear" and Plaintiff did not fear him).  Plaintiff's Depo. at 145-46.  Plaintiff's response to Defendant's motion abandoned these five reasons.

[3]Plaintiff initially cited a third exhibit as creating an additional explanation, but his counsel withdrew the exhibit upon discovering that it related to someone other than Plaintiff.  Formerly Ex. "F" to Plaintiff's Response.

Contrary to Plaintiff's assertions, Kolher has always cited the GageTrak incident and Plaintiff's history of performance and disciplinary issues when justifying the decision. These two reasons were expressly discussed in the internal ACT form that initiated the termination process. Ex. "U" to Defendant's Motion. The ACT starts by stating, "We continue to have issues with Patrick Riordan's performance." *Id*. The memorandum then recounts portions of that history and states that an investigation uncovered the alleged falsification of the GageTrak data regarding the ADCOLE calibration date. The ACT concludes that management has suffered a "loss of faith" in Plaintiff. *Id*. The GageTrak incident was also cited as the reason for the decision in Kolher's response to the EEOC inquiry, which also discussed the history of employment problems. Ex. "C" to Plaintiff's Response. Finally, Defendant's initial memorandum in support of summary judgment and its reply brief repeatedly argue that the decision was based on the GageTrak incident and the employment history. As stated in the initial memorandum, "Defendant had a legitimate nondiscriminatory reason for terminating Plaintiff because of the overwhelming evidence that Plaintiff had falsified records as to the calibration of the ADCOLE machine, compounded with the documented history of poor job performance." Defendant's Memorandum at 20; *see also id* at 16, 21; Defendant's Reply at 2, 6. The record fails to demonstrate an inconsistency upon which Plaintiff can demonstrate pretext.

             b.      Plaintiff's Denial that He Altered GageTrak Data for ADCOLE Machine

Plaintiff's only remaining attempt to demonstrate pretext disputes the GageTrak incident and states in its entirety:

> Additionally, it is undisputed that Mr. Riordan denies falsifying any company records, and it could not be apparent to Defendant that Mr. Riordan falsified the company records because the Defendant gave super user access to numerous other

individuals who had the ability to alter the records.  Def. Mem at p. 20; See
Exhibit "D" at 100-101.

Plaintiff's Response at 6.  Plaintiff's argument falls short for several reasons.

First, Plaintiff's assertion that someone else must have accessed the GageTrak system
misses the mark.  The appropriate inquiry is "whether [Kohler's] perception of [Riordan's]
performance, accurate or not, was the real reason for [his] termination."  *Laxton*, 333 F.3d at 579
(citations and quotations omitted).  Whether the group of managers who made the decision to
terminate Riordan's employment were wrong to believe he changed the calibration dates is
irrelevant, "as even an employer's incorrect belief in the underlying facts-or an improper decision
based on those facts-can constitute a legitimate, non-discriminatory reason for termination."
*Amezquita v. Beneficial Tex., Inc*. 264 F.App'x 379, 386, 2008 WL 276279, at *5 (5th Cir. 2008)
(citing *Bryant v. Compass Group USA Inc.,* 413 F.3d 471, 478 (5th Cir. 2005); *Mayberry v.
Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir. 1995)).  Instead, the concern "is whether the
evidence supports an inference that [Kohler] intentionally discriminated against [Riordan], an
inference that can be drawn if its proffered reason was not the real reason for discharge."  *Laxton*,
333 F.3d at 579.

Kohler notes that the entry was changed just days after Plaintiff was asked to explain why
the calibration was a year and a half past due, and it was changed to reflect that Plaintiff
calibrated the machine on the date Plaintiff claims to have run the "gold standard" procedure.
Plaintiff has simply failed to offer competent evidence supporting an inference of intentional
discrimination.  *Id*.  There is nothing in the record from which a jury could find that the

collective group that recommended and approved this decision did so for a reason other than the ones Defendant has proffered.  *Bryant,* 413 F.3d at 478.

Second, even if Plaintiff had offered sufficient evidence with respect to the GageTrak incident, that incident is not the only proffered basis for the decision to terminate his employment.  Defendant's motion also cites Plaintiff's history of performance and disciplinary problems.  That history is discussed at length in its memoranda.  *See* Defendant's Memorandum in Support of Summary Judgment at 2-16.  The history clearly demonstrates a deteriorating relationship and "loss of faith" that culminated in Plaintiff's discharge after the GageTrak incident.  *Id.*  Plaintiff made no effort to address this nondiscriminatory reason for the employment decision, and the failure to do so is fatal.  *See Machinchick*, 398 F.3d at 351 (holding that "a plaintiff relying upon evidence of pretext to create a fact issue on discriminatory intent falters if he fails to produce evidence rebutting all of a defendant's proffered nondiscriminatory reasons").[4]

## III.    Conclusion

Based on the foregoing, the Court grants Kohler's motion for summary judgment.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

---

[4]"The nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."  *Fuentes v. Postmaster Gen. of USPS*, No. 07-10426, 2008 WL 64673, at *3 (5th Cir. Jan. 7, 2008) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).  Although the Court endeavored to consider the record as a whole, "district courts are under no duty 'to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir. 1992)).

**SO ORDERED AND ADJUDGED** this the 19th day of November, 2008.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

13